```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    **Plaintiff,**<br><br>              **v.**<br><br>AHSHA NATEEF TRIBBLE [1],<br>DONALD KEITH ELLISON [2],<br><br>    **Defendants.** | **Criminal No.** 19-541 (FAB) |

## OPINION AND ORDER

BESOSA, District Judge.

Defendants Donald Keith Ellison ("Ellison") and Asha Nateef Tribble ("Tribble") (collectively, "defendants") request that the Court compel the United States to produce three grand jury transcripts and two Department of Homeland Security ("DHS") Memoranda of Activity ("MOA"). (Docket No. 179.) For the reasons set forth below, the defendants' motion to compel is **DENIED**.

I. **Background**

After Hurricane María devastated Puerto Rico, a Federal Emergency Management Agency ("FEMA") official and a private contractor purportedly defrauded the United States, profiting from the massive influx of federal funds to the Commonwealth. The United States allocated these funds for restoration efforts, including repairs to the dilapidated electrical grid.

The Category 5 storm was "of such severity and magnitude that effective response [proved] beyond the capabilities" of local governments. 42 U.S.C. § 5170(a). Consequently, President Donald Trump issued a disaster declaration pursuant to the Robert T. Stafford Relief and Emergency Assistance Act, 42 U.S.C. sections 5121 *et seq.* (Docket No. 3 at p. 1.) As the FEMA Deputy Regional Administrator and Sector Lead for Power and Infrastructure, Tribble supervised "damage assessment, mitigation assistance, and overall coordination of Federal, State, Local, tribal, private, and volunteer response efforts" in Puerto Rico. Id. This position required Tribble to approve "Assistance Project Worksheets up to $200,000,000.00" Id. at p. 6.

Ellison is the former president of Cobra Acquisitions, LLC ("Cobra"), a company commissioned by the Puerto Rico Electric Power Authority ("PREPA") to "provide labor, supervision, tools, equipment, and materials necessary to perform the storm restoration services at various locations." Id. at p. 7. He allegedly purchased, *inter alia*, a helicopter tour of Puerto Rico, assistance in procuring a residence in New York, hotel accommodations in Florida, and personal security services, all for Tribble. Id. at p. 13. He also directed Cobra to hire FEMA Deputy Chief of Staff Jovanda Patterson ("Patterson") at Tribble's behest. Id.

In exchange, Tribble allegedly performed official acts on behalf of Cobra.  Id. at p. 14.  For instance, Tribble pressured PREPA executives to accelerate payments to Cobra, to hire Cobra employees instead of relying on PREPA personnel, and to retain Cobra instead "of other contractors."  Id.

On September 3, 2019, a grand jury returned an indictment charging Ellison and Tribble with conspiracy to commit bribery (count one), four counts of honest services wire fraud (counts two through five), and disaster fraud (count six) in violation of 18 U.S.C. section 371, 18 U.S.C. sections 1343, 1345, and 18 U.S.C. sections 1040, 2, respectively.  Id.  The indictment also sets forth four Travel Act charges against Tribble (counts seven to ten).  Id.; see 18 U.S.C. section 1952(a)(3).  Ellison allegedly made two false statements to federal law enforcement agents (counts twelve and thirteen).  Id.; see 18 U.S.C. section 1001(a)(2).  Id.  Lastly, the grand jury charged Patterson with one count of conducting government business with a conflict of interest (count thirteen), and two counts of wire fraud (counts fourteen and fifteen) in violation of 18 U.S.C. sections 208 and 1343, respectively.[1]

---

[1] Patterson pled guilty to count thirteen of the indictment, acknowledging that she "completed a customer Past Performance Evaluation for Cobra Logistics that was part of the bid process" while she "was negotiating and had an arrangement concerning prospective employment with Cobra."  (Docket No. 93 at p. 12.)  The Court sentenced Patterson to a three-year term of probation. (Docket No. 121.)

The United States has produced voluminous discovery. United States v. Ellison, 442 F. Supp. 3d 491, 494 (D.P.R. 2020) (Besosa, J.). The defendants request that the Court compel the United States to disclose unredacted grand jury transcripts and internal government reports. (Docket No. 179.) The United States contends, however, that this material is "protected under Rule 16(a)(2) and not otherwise discoverable under Brady [v. Maryland] or the Jencks Act/Rule 26.2." (Docket No. 195 at p. 8.) The Court agrees.

**II.  Federal Rule of Criminal Procedure 16**

Federal Rule of Criminal Procedure 16 ("Rule 16") governs discovery in criminal actions. Fed. R. Crim. P. 16; see James Cissell, Federal Criminal Trials § 7-7 (2021 ed.) ("Rule 16 of the Federal Rules of Criminal Procedure is the basic, and in most cases, the exclusive discovery tool that can be utilized by a defendant"). "[T]here is no general constitutional right to discovery in a criminal case." Weatherford v. Bursey, 429 U.S. 545, 559 (1977); see Kaley v. United States, 571 U.S. 320, 335 (2014). In addition to Rule 16, the Supreme Court has held that due process of law demands the disclosure of exculpatory and impeachment evidence. See Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that the United States must disclose exculpatory evidence that "is either material to guilt or to punishment"); Giglio v. United States, 405 U.S. 150, 154 (1972) (holding that

the United States must disclose impeachment material when "the reliability of a given witness may well be determinative of guilt or innocence.")

Pursuant to Jencks v. United States, criminal defendants are entitled to inspect "relevant" and "competent" statements by witnesses who testify on behalf of the United States. 353 U.S. 657, 667 (1957). The Jencks court did not, however, identify when the United States is required to furnish this material. Id.; see Ellen S. Podgor, Criminal Discovery of Jencks Witness Statements: Timing Makes a Difference, 15 GA. ST. U.L. REV. 651 (1999) (noting that Jencks "was met with significant criticism" for this ambiguity) (citing Edward B. Williams, One Man's Freedom, p. 172 (Simon & Schuster, 1962) ("The Jencks decision raised a storm of conflict. It was widely predicted that every file would be opened to the forces of subversion and that law enforcement would become impossible.")).

In response to this omission, Congress passed the Jencks Act in 1965, "hoping to strike a balance between issues of fairness to the defense and law enforcement needs." United States v. Snell, 899 F. Supp. 17, 24 (D. Mass. 1995); see 18 U.S.C. § 3500. The Jencks Act provides that:

Criminal No. 19-541 (FAB)                                              6

> **After a witness called by the United States has testified on direct examination**, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. § 3500(b) (emphasis added).[2]  It is beyond peradventure that this statute "authorizes the government to withhold the recorded statements of a prospective government witness until the witness completes his direct testimony." United States v. Tejeda, 974 F.2d 210, 217 (1st Cir. 1992); see United States v. Kouri-Pérez, 47 F. Supp. 2d 166, 173 (D.P.R. 1999) (holding that "it is abundantly clear that district judges may not compel pretrial

---

[2] Federal Rule of Criminal Procedure 26.2 and the Jencks Act are substantially the same.  Fed. R. Crim. P. 26.2; see 2A C. Wright & P. Henning, Federal Practice and Procedure, § 436 (4th ed. 2009) ("Rule 26.2 did two things.  It wrote into the rules what had been in the statutes as the Jencks Act, on the 'notion that provisions which are purely procedural should appear in the Federal Rules of Criminal Procedure rather than Title 18,' [and] provided for the production of the statements of defense witnesses") (quotation omitted). To avoid redundancy, the Court refers exclusively to the Jencks Act.

disclosure of non-exculpatory Jencks materials prior to the conclusion of a witness' direct testimony") (Fusté, J.).[3]

## III. Discussion

Ellison and Tribble move to compel the disclosure of grand jury transcripts of the testimony proffered by DHS Office of Inspector General special agent Joseph Chadwick Kenney ("Kenney"), the case agent assigned to this matter. (Docket Nos. 179.) They also request MOA #4 and MOA #6, internal government reports prepared by a DHS forensic auditor. Id. The defendants are not entitled to this evidence.

### A.    Grand Jury Transcripts

Agent Kenney testified before the grand jury on August 9, August 20, and September 3, 2019. (Docket No. 176 at p. 2.) According to the defendants, the United States is "withholding about 90% of the transcript pages of Agent Kenney's

---

[3] See also United States v. Grandmont, 680 F.2d 867, 875 (1st Cir. 1982) (holding that a "court may not compel the disclosure of statements of Government witnesses before the conclusion of their direct testimony"); United States v. Owens, 933 F. Supp. 76, 88 (D. Mass. 1996) (noting that "the overwhelming majority of cases – including cases from the First Circuit – adhere to the rule that is nearly absolute: district court judges may not, over the government's objection, compel pretrial disclosure of nonexculpatory Jencks Act material earlier than the close of the witness's testimony on direct examination"); United States v. Kantengwa, 2010 U.S. Dist. LEXIS 88133 *15 (D. Mass. July 29 2010) (holding that pretrial disclosure of witness statements is "a matter submitted to the government's grace. The government cannot be compelled by the court to do what Congress has said it does not have to do."); United States v. Murphy, 569 F.2d 771, 773 (3d Cir. 1978) ("The blunt command of the statute together with the unequivocal legislative history has led to the unbroken precedent in the Courts of Appeals denying to district courts the power to compel production of the statements of government witnesses until the conclusion of direct examination at the trial.") (citing cases).

Criminal No. 19-541 (FAB)                                              8

testimony at the grand jury."  Id.  The percentage of redacted material is irrelevant.  No rule mandates that the United States adduce a specific ratio of discovery.  The Federal Rules of Criminal Procedure are based on principles of due process, not on mathematical quotas.

Because the defendants have requested Jencks material, "precedent requires [this Court] to conduct an independent investigation of any such materials and determine whether these materials are discoverable under the Jencks Act." United States v. González-Meléndez, 570 F.3d 1, 3 (1st Cir. 2009).  The United States produced the unredacted grand jury transcripts on April 5, 2021, for an *in camera* review.  (Docket No. 196.)  Pretrial disclosure of Jencks material is not warranted for three reasons.

First, the defendants misconstrue the Jencks Act.  They argue that the statements are necessary to "prepare their defenses well in advance of trial." (Docket No. 179 at p. 8.)  The Jencks Act is not, however, a "pretrial discovery tool." United States v. Padilla-García, 990 F.3d 60 (1st Cir. 2021) (quotation omitted). Nothing prevents Ellison and Tribble from investigating the charges set forth in the indictment.  They may gather evidence and request to interview witnesses on their own accord. Cf Kaley, 571 U.S. at 335 (holding that the United States has no obligation to "give the defendant knowledge of the Government's case and strategy

Criminal No. 19-541 (FAB)                                                    9

well before the rules of criminal procedure — or principles of due process . . . would otherwise require"). The defendants may not invoke the Jencks Act to conduct discovery. See In re United States, 834 F.2d 283, 286 n.2 (2d Cir. 1987) ("Disclosures are required by the Jencks Act only for impeachment purposes.") (citing Palermo v. United States, 360 U.S. 343, 345 (1959) (emphasizing that defendants are "entitled, under certain circumstances, to obtain, **for impeachment purposes**, statements which had been made to government agents by government witnesses")) (emphasis added).

Second, Ellison and Tribble request that the Court commandeer an authority that Congress has explicitly reserved for the executive branch. The statutory language is clear: The United States need not provide the defendants with Jencks material until the conclusion of the witness' direct examination at trial. 18 U.S.C. § 3500; see United States v. Astacio-Espino, 783 F. Supp. 2d. 287, 292 (D.P.R. 2011) (holding that Congress "expressly [limited] the Court's authority to compel the government to disclose any material within the scope of the Jencks Act") (Besosa, J.); United States v. Ortiz-García, 553 F. Supp. 2d 199, 121 n.2 (D.P.R. 2008) ("Clearly, under the Jencks Act, the government cannot be compelled to disclose the information defendants now seek at [the pretrial] stage of the proceedings.") (Besosa, J.).

Criminal No. 19-541 (FAB)                                          10

Third, Ellison and Tribble surmise that the redacted transcripts contain exculpatory evidence. (Docket No. 179 at p. 7.) Exculpatory witness statements present competing disclosure requirements: Brady evidence must be disclosed in a "timeous manner," while Jencks material is due only after direct examination. United States v. Montoya, 844 F.3d 63, 71 (1st Cir. 2016) (citation omitted); United States v. Owens, 933 F. Supp. 76, 84 (D. Mass. 1996) ("Despite the strictures of section 3500, a thorough reading of applicable case law indicates that a district judge has authority to order disclosure of exculpatory witness testimony before trial.") but see United States v. Casas, 355 F.3d 104, 116 n.2 (1st Cir. 2004) (noting, without resolving, a "potential conflict between Brady and the Jencks Act"). The Court reviewed agent Kenney's testimony in a conscientious manner. This evidence is not exculpatory. Accordingly, the motion to compel pretrial disclosure of agent Kenney's unredacted grand jury transcripts is **DENIED**.

    **B.**    **Memoranda of Authority**

The United States produced the attachments to MOA #4 and MOA #6, but have not disclosed the reports rendered by a DHS forensic auditor. (Docket No. 179.) Rule 16 provides that "reports, memoranda, or other internal government documents made by [a] government agent in connection with investigating or

Criminal No. 19-541 (FAB)                                              11

prosecuting the case" are "not subject to disclosure."  Fed. R. Crim. P. 16(a)(2).  Although the United States need not produce MOA #4 and MOA #6 pursuant to Rule 16, the Court reiterates that Brady imposes an ongoing obligation to furnish exculpatory evidence to the defendants.  Connick v. Thompson, 563 U.S. 51, 98 n.15 (2011) (noting that the "duty to produce Brady material . . . continues throughout the entirety of the trial").  The Court is confident that the United Sates is aware of its duty to disclose impeachment or exculpatory information timely.  See United States v. Rosa-Pagán, No. 09-319, 2010 U.S. Dist. LEXIS 59737 *13 (D.P.R. June 26, 2010) (denying motion to compel disclosure of ROI's, because "[t]he defense only provides a general description of the documents requested and alleges in a conclusory fashion that they are material because they may contain impeachment and/or exculpatory evidence") (citing United States v. Caro-Muñiz, 406 F.3d 22, 30 (1st Cir. 2005)).  Consequently, Ellison and Tribble's request for MOA #4 and MOA #6 is **DENIED**.

Criminal No. 19-541 (FAB) 12

## IV. Conclusion

For the reasons set forth above, Ellison and Tribble's motion to compel is **DENIED**. (Docket No. 179.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 2, 2021.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE